**ORAL ARGUMENT NOT YET SCHEDULED**

No. 23-7051

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NIA LUCAS,
      Plaintiff-Appellant,

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE)
and AFGE LOCAL 228,
      Defendants-Appellees.

On Appeal from the United States District Court
for the District of Columbia
No. 1:22-cv-00777

**FINAL BRIEF OF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND IN FAVOR OF REVERSAL**

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

STEVEN WINKELMAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

All parties appearing in the district court and before this Court are listed in Plaintiff-Appellant's opening brief. The Equal Employment Opportunity Commission files this brief as amicus curiae and did not participate in the district court.

## B.    Ruling Under Review

References to the ruling at issue appear in Plaintiff-Appellant's opening brief.

## C.    Related Cases

This appeal has been consolidated with *Lucas v. American Federation of Government Employees, et al.*, No. 23-7054 (D.C. Cir.). The Commission is not aware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C). However, Plaintiff-Appellant has filed separate actions against her former employing agency, which are pending in the U.S. District Court for the District of Columbia. *See Lucas v. Guzman, Adm'r, U.S. Small Bus. Admin.*, No. 1:21-cv-00296 (D.D.C.); *Lucas v. Guzman, Adm'r, U.S. Small Bus. Admin.*, No. 1:22-cv-02101 (D.D.C.).

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

May 24, 2024

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.......... i

TABLE OF AUTHORITIES.................................................................iv

GLOSSARY OF ABBREVIATIONS ..................................................... xi

STATEMENT OF INTEREST .............................................................1

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF THE CASE..............................................................2

    A.  Statement of the Facts. ................................................................2

    B.  District Court's Decision...........................................................5

ARGUMENT......................................................................................7

    I.  Federal courts have jurisdiction over Title VII and ADA claims against federal-employee unions even when those claims are premised on conduct that could also support unfair representation claims under the CSRA. ...................................................7

        A.    Discrimination claims under Title VII and the ADA are distinct from unfair representation claims under the CSRA..........9

            1.  Title VII and the ADA prohibit a broader range of union discrimination than the CSRA. ...........................................10

            2.  Title VII and ADA claims are subject to different substantive and procedural requirements than CSRA claims. ..........................15

            3.  Title VII and the ADA offer a broader collection of remedies than the CSRA. ....................................................................17

        B.    Plaintiffs may pursue Title VII or ADA claims against unions independent of the duty of fair representation...............................20

II. Title VII and the ADA prohibit unions from harassing their members—or failing to remedy union agents' harassment of members—based on protected traits. ......................................................23

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE ....................................................32

CERTIFICATE OF SERVICE .................................................................33

# TABLE OF AUTHORITIES

**Cases**

*1199 DC, Nat'l Union of Hosp. & Health Care Emps. v. Nat'l Union of Hosp. & Health Care Emps.,*
  533 F.2d 1205 (D.C. Cir. 1976) ........................................................................13

*AFGE, AFL-CIO, Loc. 2094 v. FLRA,*
  833 F.2d 1037 (D.C. Cir. 1987) ........................................................................5

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975) ........................................................................19

*Alexander v. Gardner-Denver Co.,*
  415 U.S. 36 (1974) ........................................................................ 16, 19

*Andrade v. Lauer,*
  729 F.2d 1475 (D.C. Cir. 1984) ........................................................................19

*Anjelino v. N.Y. Times Co.,*
  200 F.3d 73 (3d Cir. 1999) ........................................................................25

*Baird v. Gotbaum,*
  792 F.3d 166 (D.C. Cir. 2015) ........................................................................26

*Banks v. Int'l Union of Operating Eng'rs Loc. 99,*
  200 F. Supp. 3d 70 (D.D.C. 2016) ........................................................................ 17, 21

*Baskin v. Hawley,*
  807 F.2d 1120 (2d Cir. 1986) ........................................................................17

*Berger v. Iron Workers Reinforced Rodmen Loc. 201,*
  843 F.2d 1395 (D.C. Cir. 1988) ........................................................................14

*Berger v. Iron Workers Reinforced Rodmen Loc. 201,*
  852 F.2d 619 (D.C. Cir. 1988) ........................................................................15

*Blankenship v. AFGE,*
  No. 3:15-cv-00294, 2016 WL 1276425 (E.D. Va. Mar. 30, 2016) ........................22

*Burlington N. & Santa Fe Ry. v. White*,
548 U.S. 53 (2006) .............................................................. 24, 29, 30

*Burton v. AFGE 1988*,
No. 1:11-cv-01416, 2012 WL 3580399 (E.D.N.Y. Aug. 17, 2012) ................21

*Cantrell v. Int'l Bhd. of Elec. Workers, Loc. 2021*,
32 F.3d 465 (10th Cir. 1994) .................................................................17

*Carrington v. United States*,
42 F. Supp. 3d 156 (D.D.C. 2014) ....................................................12

*CBOCS W., Inc. v. Humphries*,
553 U.S. 442 (2008) .............................................................................29

*Chambers v. District of Columbia*,
35 F.4th 870 (D.C. Cir. 2022) (en banc) .........................................30

*Clipper v. Frank*,
704 F. Supp. 285 (D.D.C. 1989) .......................................................18

*Cogburn v. AFGE*,
No. 1:06-cv-00425, 2006 WL 2884505 (S.D. Miss. Oct. 10, 2006) ................21

*Dixon v. Int'l Bhd. of Police Officers*,
504 F.3d 73 (1st Cir. 2007).................................................................24

*Dowd v. United Steelworkers of Am., Loc. No. 286*,
253 F.3d 1093 (8th Cir. 2001) ...........................................................24

*Emswiler v. CSX Transp., Inc.*,
691 F.3d 782 (6th Cir. 2012) .............................................................13

*Feminist Majority Found. v. Hurley*,
911 F.3d 674 (4th Cir. 2018) .............................................................26

*Garity v. Am. Postal Workers Union, Nat'l Lab. Org.*,
828 F.3d 848 (9th Cir. 2016) ........................................... 14, 15, 16, 20

*Golden State Transit Corp. v. City of Los Angeles*,
493 U.S. 103 (1989) .............................................................................22

v

*Goodman v. Lukens Steel Co.*,
  482 U.S. 656 (1987) ...................................................................20

*Gowski v. Peake*,
  682 F.3d 1299 (11th Cir. 2012) .................................................26

*Green v. Am. Fed'n of Tchrs./Ill. Fed'n of Tchrs. Loc. 604*,
  740 F.3d 1104 (7th Cir. 2014) ...................................................20

*Greer v. Bd. of Trs. of Univ. of D.C.*,
  113 F. Supp. 3d 297 (D.D.C. 2015) ...........................................16

*Groff v. DeJoy*,
  600 U.S. 447 (2023) .....................................................................9

*Gullaksen v. United Air Lines*,
  68 F. Supp. 3d 66 (D.D.C. 2014) ...............................................15

*Hines v. Anchor Motor Freight, Inc.*,
  424 U.S. 554 (1976) ...................................................................13

*Hussain v. Nicholson*,
  435 F.3d 359 (D.C. Cir. 2006) ...................................................26

*Int'l Bhd. of Elec. Workers v. Foust*,
  442 U.S. 42 (1979) .....................................................................18

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005) ...................................................................27

*Jennings v. Am. Postal Workers Union*,
  672 F.2d 712 (8th Cir. 1982) .......................................................9

*Johnson v. Ry. Express Agency, Inc.*,
  421 U.S. 454 (1975) ............................................................ 14, 19

*Jones v. Am. Postal Workers Union*,
  192 F.3d 417 (4th Cir. 1999) .......................................................9

*Jones v. R.R. Donnelley & Sons Co.*,
  541 U.S. 369 (2004) ...................................................................20

*Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263*,
   489 U.S. 527 (1989) ................................................................10

*Kolstad v. Am. Dental Ass'n*,
   527 U.S. 526 (1999) ................................................................18

*Macklin v. Spector Freight Sys., Inc.*,
   478 F.2d 979 (D.C. Cir. 1973) .................................... 14, 22

*Meritor Sav. Bank, FSB v. Vinson*,
   477 U.S. 57 (1986) ..................................................................24

*Monaghan v. Worldpay US, Inc.*,
   955 F.3d 855 (11th Cir. 2020) ...........................................26

*Morris v. Oldham Cnty. Fiscal Ct.*,
   201 F.3d 784 (6th Cir. 2000) ...............................................27

*N. Am. Butterfly Ass'n v. Wolf*,
   977 F.3d 1244 (D.C. Cir. 2020) ............................................2

*Nat'l Air Traffic Controllers Ass'n AFL-CIO*,
   66 F.L.R.A. 467 (2012) ..........................................................12

*Nat'l Treasury Emps. Union v. FLRA*,
   800 F.2d 1165 (D.C. Cir. 1986) ..........................................13

*Noviello v. City of Boston*,
   398 F.3d 76 (1st Cir. 2005) ..................................................26

*Palmer v. Barry*,
   894 F.2d 449 (D.C. Cir. 1990) .............................................16

*Peeples v. City of Detroit*,
   891 F.3d 622 (6th Cir. 2018) ...............................................20

*Phillips v. UAW Int'l*,
   854 F.3d 323 (6th Cir. 2017) ...............................................25

*Price v. AFGE*,
   No. 3:15-cv-00293, 2016 WL 1276421 (E.D. Va. Mar. 30, 2016) ..................21

*Quinn v. DiGiulian*,
   739 F.2d 637 (D.C. Cir. 1984)................................................................. 18, 23

*Rainey v. Town of Warren*,
   80 F. Supp. 2d 5 (D.R.I. 2000) ...........................................................14

*Ratzlaf v. United States*,
   510 U.S. 135 (1994)...............................................................................27

*Robinson v. Davis Mem'l Goodwill Indus., Inc.*,
   36 F.3d 127 (D.C. Cir. 1994) (unpub. table decision) ...................................18

*Seitz v. Int'l Bhd. of Teamsters*,
   No. 23-cv-01716, 2023 WL 6883358 (N.D. Cal. Oct. 17, 2023) ....................14

*Singletary v. District of Columbia*,
   351 F.3d 519 (D.C. Cir. 2003)...............................................................26

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home*,
   918 F.2d 963 (D.C. Cir. 1990)...............................................................10

*Stelly v. W. Gulf Mar. Ass'n*,
   407 F. Supp. 3d 673 (S.D. Tex. 2019) ..................................................... 28, 29

*Sullivan v. Stroop*,
   496 U.S. 478 (1990)...............................................................................27

*Taylor v. Rice*,
   451 F.3d 898 (D.C. Cir. 2006)...............................................................12

*Thomas v. NLRB*,
   213 F.3d 651 (D.C. Cir. 2000)...............................................................15

*Vaca v. Sipes*,
   386 U.S. 171 (1967)...............................................................................13

*Washam v. J. C. Penney Co.*,
   519 F. Supp. 554 (D. Del. 1981) ...........................................................22

*Woods v. Graphic Commc'ns*,
   925 F.2d 1195 (9th Cir. 1991) ...............................................................25

*Young v. Int'l Tel. & Tel. Co.,*
   438 F.2d 757 (3d Cir. 1971) ...............................................................22

**Statutes**

*Americans with Disabilities Act*

42 U.S.C. § 12101 .................................................................................1

42 U.S.C. § 12111 .................................................................................9

42 U.S.C. § 12112 ........................................................... 9, 11, 12, 24

42 U.S.C. § 12117 ........................................................................ 16, 18

42 U.S.C. § 12203 ............................................................................ 9, 25

*Civil Rights Act of 1964*

42 U.S.C. § 1981a .............................................................................18

42 U.S.C. § 2000e...........................................................................1, 9

42 U.S.C. § 2000e-16 ........................................................................6

42 U.S.C. § 2000e-2 ...................................................... 9, 11, 12, 24, 28

42 U.S.C. § 2000e-3 ................................................................ 9, 11, 25

42 U.S.C. § 2000e-5 ..................................................................... 16, 18

*Civil Service Reform Act*

5 U.S.C. § 2302 ....................................................................................6

5 U.S.C. § 7114 ....................................................................... 10, 12, 13

5 U.S.C. § 7116 ............................................................................ 10, 13

5 U.S.C. § 7118 ............................................................................ 16, 17

**Rules and Regulations**

29 C.F.R. § 1604.11 ................................................................................................30

Fed. R. App. P. 29 ...................................................................................................1

**Other Authorities**

EEOC Compliance Manual § 2-III(B)(1)(c) (Aug. 2009),
    https://www.eeoc.gov/laws/guidance/section-2-threshold-
    issues#2-III-B-1-c ......................................................................................... 9, 20

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ADA | Americans with Disabilities Act |
| AFGE | American Federation of Government Employees |
| CSRA | Civil Service Reform Act |
| EEOC or Commission | Equal Employment Opportunity Commission |
| FLRA or Authority | Federal Labor Relations Authority |
| Local 228 | AFGE Local 228 |
| NLRB | National Labor Relations Board |
| Title VII | Title VII of the Civil Rights Act of 1964 |

## STATEMENT OF INTEREST

Congress tasked the Equal Employment Opportunity Commission (the Commission or EEOC) with enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and Title I of the Americans with Disabilities Act (ADA), *id.* §§ 12101 *et seq.* This case concerns whether and when federal courts have jurisdiction over Title VII and ADA claims against federal-employee unions and, if so, whether such claims may encompass harassment perpetrated by unions or their agents. The Commission has a substantial interest in the proper resolution of these questions, and thus offers its views. Fed. R. App. P. 29(a)(2).

## STATEMENT OF ISSUES[1]

Nia Lucas, a former federal employee, asserts Title VII and ADA claims against her national and local unions, the American Federation of Government Employees (AFGE) and AFGE Local 228 (together, the Unions). The district court dismissed for lack of jurisdiction, without reaching the merits of these claims. The issues presented are:

---

[1] The Commission takes no position on any other issues in this appeal.

1.      Whether federal courts have jurisdiction over Title VII and

ADA claims against federal-employee unions even when those claims are

premised on conduct that could also support unfair representation claims

under the Civil Service Reform Act (CSRA).

2.      Whether Title VII and the ADA prohibit unions from harassing

their members—or failing to remedy union agents' harassment of

members—based on protected traits, including sex and disability.

## STATEMENT OF THE CASE

### A.   Statement of the Facts.[2]

Lucas is an African-American woman and an Army veteran with a

service-connected disability. JA046 [R.6 at 3 (¶ 14)]. In 2017, Lucas began

working for the Small Business Administration, and Local 228 represented

her bargaining unit. JA045-46 [R.6 at 2-3 (¶¶ 6, 17)]. In February 2018, Local

228's then-president, Johnnie Green, began sexually harassing Lucas. JA046

[R.6 at 3 (¶ 22)]; JA048 [R.6 at 5 (¶ 34)]. According to Lucas, Green "made

---

[2] We draw these facts from Lucas's complaint and present them in the light most favorable to her, as required at the pleading stage. *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). In the bracketed record citations, "R.# at #" refers to the district court docket entry and CM/ECF-assigned page number(s) in case no. 1:22-cv-00777. Where appropriate, original paragraph numbers are provided parenthetically.

unwanted sexual advances toward [her], including telling her he loved her and wanted to support her financially." JA048 [R.6 at 5 (¶ 35)].

When Lucas complained to Green and "told him to stop," JA048 [R.6 at 5 (¶ 43)], the harassment escalated. After that, Green allegedly sabotaged an arbitration for a grievance Lucas was pursuing against her agency and then disparaged her for being a "nursing mother." *See, e.g.*, JA047-050 [R.6 at 4-7 (¶¶ 32-33, 37, 45-49, 57-58)]. Lucas's efforts to seek aid from AFGE proved unsuccessful. On at least two occasions, Lucas reported Green's harassment to union executives Michael Kelly (a national vice president) and Robert Harrison (a national representative). JA047 [R.6 at 4 (¶¶ 24-25)]; JA049 [R.6 at 6 (¶¶ 44, 50)]. Although Kelly allegedly elevated Lucas's complaints, AFGE took no action to remedy the situation. JA050 [R.6 at 7 (¶¶ 60-61)].

Lucas eventually filed an unfair labor practice charge with the Federal Labor Relations Authority (the Authority or FLRA), alleging that the "continuous postponement of the arbitration hearing" on her grievance constituted a "violation of the duty of fair representation." JA050 [R.6 at 7 (¶ 62)]. The charge also included Lucas's "claims for sexual harassment." JA050 [R.6 at 7 (¶ 63)]. When Green learned about the charge, he contacted

Lucas on her cellphone, called her a "bitch," and threatened to "ruin her federal career if she did not withdraw [her] complaints." JA051 [R.6 at 8 (¶ 64)]. Green then expelled Lucas from Local 228. JA051 [R.6 at 8 (¶ 65)]. Although Lucas wished to continue pursuing her grievance arbitration, which had been delayed by nearly two years, Green also "withdrew the arbitration in its entirety," informing the arbitrator that Lucas "went the EEOC Route." JA051 [R.6 at 8 (¶¶ 67-70)]. Green told Lucas that "AFGE did not want to represent disabled mothers of newborns such as [herself]." JA051 [R.6 at 8 (¶ 71)].[3]

Lucas alleges that the Unions discriminated against her in other ways by, for example, refusing to investigate her grievances, declining her request for union representation, failing to file an unfair labor practice charge against Green's predecessor, and requiring her to retain and pay for her own attorney in her grievance arbitration. JA046-049 [R.6 at 3-6 (¶¶ 21, 28-30, 39, 41, 51-54)].

---

[3] Relying on materials outside the pleadings, the district court noted that Lucas filed two more unfair labor practice charges with the Authority, which were largely premised on events after Lucas filed her initial charge. JA334-35 [R.23 at 7-8].

After Lucas filed a charge of discrimination with the Commission and received a right-to-sue letter, she filed this action against the Unions. JA052 [R.6 at 9 (¶¶ 72-73)]. Lucas asserts claims under Title VII and the ADA for sex- and disability-based discrimination, harassment, and retaliation. JA052-056 [R.6 at 9-13 (¶¶ 74-117)].

### B.    District Court's Decision.

The district court dismissed Lucas's Title VII and ADA claims for lack of jurisdiction. JA350 [R.23 at 23]. The court began its analysis by observing that the CSRA "governs labor relations in the federal workplace" and gives the Authority "exclusive enforcement authority" over unfair labor practice claims against federal-employee unions. JA340-41 [R.23 at 13-14].[4] As such, federal courts lack jurisdiction to enforce a federal-employee union's "duty of fair representation" to its members. JA342 [R.23 at 15].

The district court acknowledged that the CSRA "explicitly preserve[s] the right of federal employees to bring suit under [Title VII] …

---

[4] This part of the CSRA is also commonly referred to as the Federal Service Labor-Management Relations Act. *See* JA340 [R.23 at 13 & n.15]; *AFGE, AFL-CIO, Loc. 2094 v. FLRA*, 833 F.2d 1037, 1039 (D.C. Cir. 1987).

and under other federal anti-discrimination laws." JA343 [R.23 at 16].[5] But it reasoned that "a plaintiff cannot 'escape the CSRA's reach by dressing up [a CSRA] claim with a different label—*i.e.*, Title VII….'" JA343 [R.23 at 16] (brackets in original) (citation omitted). "Allowing employees to end-run the CSRA," the court stated, "would undermine Congress's efforts to foster a 'unitary and consistent Executive Branch position on matters involving personnel action.'" JA343 [R.23 at 16] (citation omitted).

Applying these principles, the court determined that Lucas's Title VII and ADA claims were "properly characterized as a mere repackaging of her claims under the CSRA for breach of the duty of fair representation." JA345 [R.23 at 18]. The court noted that Lucas had filed multiple unfair labor practice charges against the Unions, "complaining about the very same facts and circumstances she has now put before the Court." JA344 [R.23 at 17]. In those charges, the court said, Lucas "specifically asserted

---

[5] In support of this proposition, the district court cited 5 U.S.C. § 2302(d). That CSRA provision, however, addresses only a federal employee's claims *against her agency*. With respect to Title VII, for example, the section preserves an employee's rights and remedies under 42 U.S.C. § 2000e-16, which addresses discrimination by federal employers. 5 U.S.C. § 2302(d)(1). Accordingly, this CSRA provision is not applicable here. In any event, this provision has no impact on the proper outcome in this appeal.

that the conduct now underlying her claims under [Title VII] and the ADA contravened the CSRA's prohibition against unfair labor practices." JA345 [R.23 at 18]. Accordingly, the court concluded that Lucas's claims fell within the Authority's exclusive jurisdiction. JA345-46 [R.23 at 18-19]. The court also denied Lucas's request for leave to amend, finding that she could not cure this jurisdictional defect. JA349 [R.23 at 22].

Because the court dismissed on jurisdictional grounds, it did not reach the merits of Lucas's Title VII and ADA claims.[6] This appeal followed. JA351 [R.24].

## ARGUMENT

**I.** **Federal courts have jurisdiction over Title VII and ADA claims against federal-employee unions even when those claims are premised on conduct that could also support unfair representation claims under the CSRA.**

The district court held that Title VII and ADA claims are "properly characterized" as CSRA unfair representation claims—and fall within the Authority's exclusive jurisdiction—when both sets of claims are premised

---

[6] In the same decision, the district court dismissed another action Lucas had filed against the Unions, Green, and Kelly, asserting different claims. JA346-47 [R.23 at 19-20]. The Commission takes no position on that dismissal.

on the same conduct. In other words, according to the court, when Title VII and ADA claims derive from the same factual core as unfair representation claims, the CSRA governs, and the plaintiff has no judicial remedy for union discrimination.

That jurisdictional ruling is mistaken. Under a correct understanding of the respective statutes, discrimination claims under Title VII and the ADA are not coterminous with unfair representation claims under the CSRA even when both sets of claims are premised on the same conduct. That is so because discrimination and unfair representation claims are distinct and independent causes of action, each with its own unique requirements for establishing a violation. Given these disparate requirements, a union's conduct may constitute discrimination under Title VII or the ADA, but not unfair representation under the CSRA. Moreover, Title VII and the ADA offer a broader collection of remedies than the CSRA, including compensatory and punitive damages. Accordingly, federal court may often provide the only forum in which a plaintiff can obtain adequate relief for discrimination by a federal-employee union.

For these reasons, this Court should reverse the district court's judgment and remand the case for further appropriate proceedings.

**A. Discrimination claims under Title VII and the ADA are distinct from unfair representation claims under the CSRA.**

Title VII and the ADA forbid various forms of union discrimination. *See Groff v. DeJoy*, 600 U.S. 447, 459 n.5 (2023) ("Labor organizations themselves were and are bound by Title VII's nondiscrimination rules." (cleaned up)). As relevant here, the statutes prohibit labor organizations from discriminating against individuals based on protected traits, including sex and disability, 42 U.S.C. §§ 2000e-2(c), 12111(2), 12112(a), and from retaliating against individuals for engaging in protected activity, *id.* §§ 2000e-3(a), 12203(a). Federal-employee unions "constitute labor organizations for purposes of Title VII liability and by proxy the ADA." *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 428 (4th Cir. 1999); *see also Jennings v. Am. Postal Workers Union*, 672 F.2d 712, 716 (8th Cir. 1982) (federal-employee unions are "subject to" Title VII).[7]

_____

[7] The Unions do not dispute that they meet the statutory definition of "labor organization." *See* 42 U.S.C. § 2000e(d) (Title VII defining "labor organization"); *id.* § 12111(7) (ADA incorporating Title VII's definition); EEOC Compliance Manual § 2-III(B)(1)(c), n.116 (Aug. 2009), https://www.eeoc.gov/laws/guidance/section-2-threshold-issues#2-III-B-1-c ("Federal unions are covered by Title VII and the ADA because the definition of 'labor organization' in … Title VII, which is incorporated in the ADA, broadly covers labor organizations of all kinds.").

The CSRA imposes a duty of fair representation on federal-employee unions, which requires a union to represent members of its bargaining unit "without discrimination." 5 U.S.C. § 7114(a)(1); *see also Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263*, 489 U.S. 527, 531 (1989). A union breaches that duty when, for example, it "discriminate[s] against an employee with regard to the terms or conditions of membership in the labor organization on the basis of … sex, … or handicapping condition." 5 U.S.C. § 7116(b)(4). The Authority "enjoys exclusive jurisdiction over a claim of a union's breach of its duty of fair representation." *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990).

Contrary to the district court's reasoning, discrimination claims under Title VII and the ADA are not coterminous with unfair representation claims under the CSRA. Three key differences show why.

### 1. Title VII and the ADA prohibit a broader range of union discrimination than the CSRA.

To start, Title VII and the ADA prohibit a broader array of discriminatory conduct by unions. For instance, Title VII makes it unlawful for a union to "exclude or to expel from its membership, or *otherwise to discriminate against*, any individual because of [her] race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(c)(1) (emphasis added). The statute further makes it unlawful for a union to "limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(c)(2). In addition, the statute prohibits unions from "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual in violation of this section." *Id.* § 2000e-2(c)(3); *see also id.* § 2000e-3 (prohibiting additional forms of discrimination by unions). The ADA makes similar conduct unlawful when based on disability. *Id.* § 12112(a). The ADA also prohibits additional forms of discrimination, including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5).

Notably, the protections afforded by Title VII and the ADA are not limited to union members or members of a particular bargaining unit. Title VII encompasses discrimination against "any individual," *id.* § 2000e-

2(c)(1), while the ADA encompasses discrimination against "any 'qualified individual with a disability,'" *Taylor v. Rice*, 451 F.3d 898, 905 (D.C. Cir. 2006) (emphasis omitted) (quoting 42 U.S.C. § 12112(a)). Nor are the statutes limited to discriminatory conduct that breaches a collective bargaining agreement. *See* 42 U.S.C. §§ 2000e-2(c), 12112(b). Additionally, as explained in greater detail below (*infra*, Part II), both statutes encompass harassment claims against unions.

In contrast, the duty of fair representation is circumscribed. *See Carrington v. United States*, 42 F. Supp. 3d 156, 162 (D.D.C. 2014) ("[T]he Supreme Court has narrowly defined the duty of fair representation."). Under the CSRA, a union's duty of fair representation extends only to "employees in the unit it represents." 5 U.S.C. § 7114(a)(1); *see also Nat'l Air Traffic Controllers Ass'n AFL-CIO*, 66 F.L.R.A. 467, 474 (2012) (duty of fair representation does not extend to former or future bargaining unit members).[8] Even then, although the CSRA requires unions to represent

_____

[8] Notably, the Authority dismissed at least one of Lucas's CSRA claims because the conduct on which it was premised occurred after Lucas's federal employment ended. JA112 [R.13-4 at 3]. At that point, the Authority reasoned, the CSRA's protections "did not apply to" Lucas and the Unions

members "without discrimination," 5 U.S.C. § 7114(a)(1), it encompasses a narrower category of discrimination. The sole provision that specifically mentions discrimination based on sex or "handicapping condition" prohibits only discrimination "with regard to the terms or conditions of membership in the labor organization." *Id.* § 7116(b)(4). Additionally, at least one circuit has held, in the context of private-employee unions,[9] that "to prevail on a claim for breach of duty of fair representation," the plaintiff must show that her union's conduct was "contrary to" a collective bargaining agreement. *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 793 (6th Cir. 2012) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570 (1976)); *cf. 1199 DC, Nat'l Union of Hosp. & Health Care Emps. v. Nat'l Union of Hosp. & Health Care Emps.*, 533 F.2d 1205, 1208 (D.C. Cir. 1976) ("[T]he

---

"could not have committed a violation of the Statute." JA112 [R.13-4 at 3]; *see also* Appellant Br. at 37-38.

[9] Many decisions articulating the duty of fair representation involve private-employee unions and thus do not arise under the CSRA. *See generally Vaca v. Sipes*, 386 U.S. 171, 177-81 (1967) (discussing genesis of duty of fair representation). Those decisions remain relevant here because the CSRA "adopted for government employee unions the private sector duty of fair representation." *Nat'l Treasury Emps. Union v. FLRA*, 800 F.2d 1165, 1171 (D.C. Cir. 1986).

allegation that the union violated collective bargaining agreements …

constitutes an allegation of a violation of the duty of fair representation.").

Given these differences, a union's conduct may constitute

discrimination even when it does not constitute unfair representation. As

the Ninth Circuit explains, "[a] plaintiff may still have a Title VII or an

ADA claim even if she can't prove a violation of the labor laws." *Garity v.*

*Am. Postal Workers Union, Nat'l Lab. Org.*, 828 F.3d 848, 864 (9th Cir. 2016);

*see Rainey v. Town of Warren*, 80 F. Supp. 2d 5, 17 (D.R.I. 2000) ("[A] union

can violate Title VII absent a breach of its duty of fair representation.");

*Seitz v. Int'l Bhd. of Teamsters*, No. 23-cv-01716, 2023 WL 6883358, at *6 (N.D.

Cal. Oct. 17, 2023) (stating that "Title VII claims … may be asserted

independently of the duty of fair representation").[10]

_____

[10] To be clear, a union's conduct may constitute *both* discrimination and
unfair representation. As this Court has explained, when a union breaches
its duty of fair representation and "the facts support a finding of racial
discrimination," then the union "would appear liable under Title VII" as
well. *Macklin v. Spector Freight Sys., Inc.*, 478 F.2d 979, 988 (D.C. Cir. 1973)
(citations omitted), *abrogated on other grounds by Johnson v. Ry. Express
Agency, Inc.*, 421 U.S. 454 (1975). For example, "a union's failure to
adequately represent union members in the face of employer
discrimination may subject the union to liability under either Title VII or its
duty of fair representation." *Rainey*, 80 F. Supp. 2d at 17; *see also Berger v.
Iron Workers Reinforced Rodmen Loc. 201*, 843 F.2d 1395, 1425 (D.C. Cir.) ("[A]
union that ignores or refuses to process its members' grievances against

### 2. Title VII and ADA claims are subject to different substantive and procedural requirements than CSRA claims.

Unfair representation claims are also subject to unique substantive and procedural requirements that do not hinder plaintiffs with Title VII and ADA claims. Substantively, the standard for proving unfair representation is more rigorous because courts generally "accord deference to a union" in the labor context. *Thomas v. NLRB*, 213 F.3d 651, 656 (D.C. Cir. 2000); *see also Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 66 (1991) ("Any substantive examination of a union's performance … must be highly deferential…."). Thus, "[p]laintiffs alleging a breach of the duty of fair representation have a high bar to meet." *Gullaksen v. United Air Lines*, 68 F. Supp. 3d 66, 70 (D.D.C. 2014).

In contrast, "there is no reason to grant [unions] the same deference when it comes to determining if [they] discriminated against their members on the basis of a protected classification." *Garity*, 828 F.3d at 864. Instead, the "plaintiff-friendly pleading standards" under Title VII and the ADA "make clear that the free hand unions have in other labor matters does not

_____

employers for alleged racial discrimination may be held liable under Title VII…."), *clarified on reh'g*, 852 F.2d 619 (D.C. Cir. 1988).

extend to discrimination suits." *Id.* Thus, proving discrimination may be less difficult than proving unfair representation. Indeed, the Supreme Court has acknowledged that "a breach of the union's duty of fair representation may prove difficult to establish," making it "noteworthy that Congress thought it necessary to afford the protections of Title VII against unions as well as employers." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 58 n.19 (1974).

As to procedural requirements, the statutes apply different limitations periods. Under the CSRA, an unfair labor practice charge must be filed within six months of the challenged conduct. 5 U.S.C. § 7118(a)(4)(A). Under Title VII and the ADA, in deferral jurisdictions[11] like the District of Columbia, a discrimination charge may be filed up to 300 days after the challenged conduct. 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 307 (D.D.C. 2015). Thus, discrimination claims may be timely even when unfair

---

[11] A deferral jurisdiction is one in which a state or local agency is empowered to "grant or seek relief from" unlawful employment practices. 42 U.S.C. § 2000e-5(e)(1). The District of Columbia is a deferral jurisdiction. *Palmer v. Barry*, 894 F.2d 449, 451 n.2 (D.C. Cir. 1990).

representation claims are not. *See Banks v. Int'l Union of Operating Eng'rs Loc. 99*, 200 F. Supp. 3d 70, 76 (D.D.C. 2016) ("[T]he fact that Plaintiff's breach of duty claim is time-barred does not similarly bar his discrimination claims.").[12]

### 3. Title VII and the ADA offer a broader collection of remedies than the CSRA.

The CSRA does not contemplate compensatory or punitive damages. *See* 5 U.S.C. § 7118(a)(7). Even if members of federal-employee unions were entitled to the same remedies available to members of private-employee unions under common law principles, such damages are difficult or impossible to obtain. In private-sector cases, courts have generally held that compensatory damages for injuries like emotional distress are available "only in exceptional circumstances" where a union's conduct was "extreme and outrageous." *Cantrell v. Int'l Bhd. of Elec. Workers, Loc. 2021*, 32 F.3d 465, 468 (10th Cir. 1994); *see also Baskin v. Hawley*, 807 F.2d 1120, 1133 (2d Cir. 1986) (similar). And "a union's breach of its duty of fair

---

[12] Notably, the Authority dismissed many of Lucas's CSRA claims as untimely. JA111-12 [R.13-4 at 2-3]; JA115 [R.13-5 at 2]. By contrast, with one exception, the Unions do not contest Lucas's Title VII and ADA claims on timeliness grounds. JA081-084 [R.13 at 23-26].

representation can never render it liable for punitive damages, no matter how egregious its breach may be." *Quinn v. DiGiulian*, 739 F.2d 637, 647 (D.C. Cir. 1984) (quoting *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 52-53 (1979) (Blackmun, J., concurring)); *see also Clipper v. Frank*, 704 F. Supp. 285, 288 (D.D.C. 1989) (striking demand for punitive damages against union for unfair representation). Furthermore, the Authority adjudicates unfair representation claims without jury trials.

These limited remedies stand in stark contrast to those available under Title VII and the ADA. *See, e.g.*, 42 U.S.C. § 2000e-5(g)(1) (Title VII remedies); *id.* § 12117(a) (ADA adopting Title VII's remedies). These statutes expressly provide for compensatory and punitive damages, and they do not require a showing of "extreme" or "outrageous" conduct. 42 U.S.C. § 1981a(b); *see generally Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999) (discussing available damages under Title VII, with particular focus on punitive damages). Furthermore, a plaintiff who claims compensatory or punitive damages may demand a jury trial. 42 U.S.C. § 1981a(c); *Robinson v. Davis Mem'l Goodwill Indus., Inc.*, 36 F.3d 127, at *1 (D.C. Cir. 1994) (unpub. table decision) (discussing availability of compensatory and punitive damages, and right to demand jury trial).

Given the limited remedies available under the CSRA, barring plaintiffs from seeking relief in federal court would undermine a central purpose of the anti-discrimination statutes, which is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *cf. Andrade v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984) (allowing plaintiffs to pursue constitutional claims outside CSRA scheme where, among other things, CSRA remedy would not have been "fully effective in remedying the constitutional violation").

Nor is there any indication that Congress intended for the CSRA to foreclose plaintiffs from seeking and obtaining remedies available under Title VII or the ADA. To the contrary, as the Supreme Court has stated, "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Alexander*, 415 U.S. at 47; *see also Johnson*, 421 U.S. at 472 (Marshall, J., concurring in part, dissenting in part) (discussing Congress' goal of "devising a flexible network of remedies to guarantee equal employment opportunities"). Consistent with this Congressional intent, the Commission's guidance treats the CSRA as a parallel remedy, specifically noting that when a

federal employee files a discrimination charge with the Commission

against a "federal union," the employee "can *also* file an unfair labor

practice charge with the [Authority]." EEOC Compliance Manual § 2-

III(B)(1)(c) (emphasis added).

**B.    Plaintiffs may pursue Title VII or ADA claims against unions independent of the duty of fair representation.**

In light of the differences canvased above, courts have long treated

discrimination and unfair representation claims as separate and distinct

causes of action. *See, e.g.*, *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 667

(1987) (lower court's holding that unions discriminated in violation of

Title VII not equivalent to holding that unions "violated their duty of fair

representation"), *superseded by statute on other grounds as stated by Jones v.*

*R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *Garity*, 828 F.3d at 851 ("[A]

prima facie disability discrimination claim against a union does not require

that a plaintiff demonstrate that the union breached its duty of fair

representation."); *Peeples v. City of Detroit*, 891 F.3d 622, 636-38 (6th Cir.

2018) (to prevail on Title VII claim, plaintiff need not show union breached

duty of fair representation); *Green v. Am. Fed'n of Tchrs./Ill. Fed'n of Tchrs.*

*Loc. 604*, 740 F.3d 1104, 1105 (7th Cir. 2014) (Title VII "forbids

discrimination by any labor organization" and does not "turn on the existence of a statutory or contractual duty violated by the act said to be discriminatory"); *Banks*, 200 F. Supp. 3d at 76 ("[A] plaintiff is not required to show a breach of a union's duty of fair representation in order to make out a *prima facie* case of discrimination under Title VII, [or] the ADA….").

Because the respective statutes create separate and distinct causes of action, it follows that the Authority's exclusive jurisdiction over unfair representation claims under the CSRA does not extend to discrimination claims under Title VII or the ADA. In other words, federal courts have jurisdiction over Title VII or ADA claims against a federal-employee union even when those claims are premised on conduct that could also support an unfair representation claim. *See Burton v. AFGE 1988*, No. 1:11-cv-01416, 2012 WL 3580399, at *6-13 (E.D.N.Y. Aug. 17, 2012) (dismissing unfair representation claims against federal-employee union, but allowing plaintiff to pursue Title VII claims); *Cogburn v. AFGE*, No. 1:06-cv-00425, 2006 WL 2884505, at *7 (S.D. Miss. Oct. 10, 2006) ("Defendants' assertion that the CSRA preempts Plaintiff's Title VII claims is without merit."); *see also Price v. AFGE*, No. 3:15-cv-00293, 2016 WL 1276421, at *6 n.17 (E.D. Va. Mar. 30, 2016) (agreeing that "CSRA did not extinguish a union plaintiff's

right to bring suit under Title VII"); *Blankenship v. AFGE*, No. 3:15-cv-00294, 2016 WL 1276425, at *6 n.18 (E.D. Va. Mar. 30, 2016) (same).

A federal court's exercise of jurisdiction over Title VII and ADA claims against federal-employee unions does not infringe upon the Authority's exclusive jurisdiction over unfair representation claims. In the private sector, the National Labor Relations Board (NLRB) enjoys exclusive jurisdiction over unfair labor practice claims against private-employee unions. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989). Nevertheless, several courts—including this Court—have recognized "concurrent jurisdiction in [the] EEOC, the NLRB, and the District Courts over employer and union discrimination against employees on [protected] grounds." *Macklin*, 478 F.2d at 996-97; *see also Young v. Int'l Tel. & Tel. Co.*, 438 F.2d 757, 762 (3d Cir. 1971) ("Several courts have already recognized that there is concurrent jurisdiction between the EEOC and the NLRB."); *Washam v. J. C. Penney Co.*, 519 F. Supp. 554, 559 (D. Del. 1981) (EEOC and NLRB's "concurrent jurisdiction" over union discrimination "is entirely consistent with the history and implementation of Title VII"). This Court has likewise rejected the view that "the NLRB has exclusive jurisdiction under the preemption doctrine over *conduct* that also

constitutes an unfair labor practice." *Quinn*, 739 F.2d at 643 (emphasis added). That reasoning applies with equal force here: the Authority's exclusive jurisdiction over unfair representation *claims* does not give the agency exclusive jurisdiction over all *conduct* that could constitute unfair representation.

For these reasons, the district court erred in dismissing Lucas's Title VII and ADA claims for lack of jurisdiction simply because they were premised on the same conduct underlying her CSRA unfair representation claims. Contrary to that holding, federal courts may properly exercise jurisdiction over Title VII and ADA claims against federal-employee unions.

## II. Title VII and the ADA prohibit unions from harassing their members—or failing to remedy union agents' harassment of members—based on protected traits.

In the district court, the Unions alternatively argued, among other things, that unions categorically cannot be liable for harassment claims asserted by their members. JA079-080 [R.13 at 21-22]. Because the district court dismissed on jurisdictional grounds, it did not address this issue. If this Court reaches the question, it should hold that unions may be liable for

harassing their members—or failing to remedy union agents' harassment of members—based on protected traits.

The statutory text dictates this result. Title VII and the ADA make it unlawful for unions to "discriminate against" individuals based on sex or disability. 42 U.S.C. §§ 2000e-2(c)(1), 12112(a). The phrase "discriminate against," in ordinary usage, encompasses harassment. As the Supreme Court has explained, "the term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals," *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 59 (2006), and "[w]ithout question," harassing someone because of a protected trait constitutes "'discriminat[ion]' on the basis of [that trait]," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).

Given the clear statutory text, every court of appeals that has addressed the issue has concluded that unions can be liable for harassment based on protected traits. *See Dowd v. United Steelworkers of Am., Loc. No. 286*, 253 F.3d 1093, 1102 (8th Cir. 2001) ("[T]he plain language of [Title VII] suggests that unions may be liable for any discrimination, including a claim of hostile work environment."); *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 85 (1st Cir. 2007) (union may be liable for "discrimination

within the union, by union members"); *Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1201 (9th Cir. 1991) ("We see no reason why a union should not be equally liable for its acts of racial harassment against its own members."); *see also Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999) (stating that "a union may be held liable under Title VII" for harassment, but finding that facts of case did not support liability); *Phillips v. UAW Int'l*, 854 F.3d 323, 326-27 (6th Cir. 2017) (stating in dicta that statutory text "might support a reading that Title VII prohibits unions from creating hostile work environments," but declining to decide the issue).

Courts have reached a similar result in interpreting identical language in Title VII's anti-retaliation provision. That provision makes it unlawful for an employer or labor organization to "discriminate against" an employee or union member because she has opposed an unlawful employment practice or filed a charge of discrimination. 42 U.S.C. § 2000e-3(a); *see also id.* § 12203(a) (ADA anti-retaliation provision). This Court—and every other circuit but one[13]—has held that this language

---

[13] The Fifth Circuit has yet to decide the issue. *See McCloud v. McDonough*, No. 22-10357, 2023 WL 2525656, at *3 (5th Cir. Mar. 15, 2023) (unpub.)

encompasses retaliation in the form of harassment or a hostile work environment. *See Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) ("In this circuit, a hostile work environment can amount to retaliation under Title VII.") (citing *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003)); *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) ("We have recognized a special type of retaliation claim based on a 'hostile work environment.'"); *see also Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012) (collecting cases and joining other circuits in recognizing retaliatory hostile work environment claim), *abrogated on other grounds by Monaghan v. Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (a "clear majority" of circuits recognize "retaliatory harassment" claims).

As these decisions demonstrate, "the verb 'discriminate' in the anti-retaliation clause includes subjecting a person to a hostile work environment." *Gowski*, 682 F.3d at 1312 (quoting *Noviello v. City of Boston*, 398 F.3d 76, 90 (1st Cir. 2005)). Under ordinary rules of statutory

_____

(noting that circuit has not recognized a retaliatory harassment cause of action and declining to "decide whether one exists now").

construction, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *see also Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (citing the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning" (quotation marks and citation omitted)). Applying that rule here, the term "discriminate" in the labor organization provision likewise includes subjecting a person to harassment. *Cf. Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000) (because harassment "can constitute 'discrimination'" under Title VII's anti-discrimination provision, "[i]t naturally follows" that harassment "also can constitute 'discrimination'" under Title VII's anti-retaliation provision).

Bolstering this reading, the Supreme Court has construed the term "discrimination" to encompass harassment in other federal civil rights statutes. For example, the Court has held that Title IX's broad prohibition on discrimination encompasses "a [federal funding] recipient's deliberate indifference to a teacher's sexual harassment of a student, or to sexual harassment of a student by another student." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citations omitted). This interpretation also

illustrates that harassment claims are not limited to the employer-employee context.

In urging a contrary result, the Unions point out that the Title VII provision governing labor organizations differs from the provision governing employers. JA079 [R.13 at 21]. While the employer provision prohibits discrimination "with respect to … compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), the labor organization provision contains no such qualification, *id.* § 2000e-2(c)(1).

While the Unions believe this difference shows that only the employer provision encompasses harassment claims, it actually proves the opposite. That is, the absence of the phrase "terms, conditions, or privileges of employment" in the labor organization provision necessarily results in a *broader*, not a narrower, protection against discrimination. As one court explains: "The clause 'with respect to his compensation, terms, conditions, or privileges of employment,' which is present only in the employer subsection, narrows, rather than expands, the operative language 'or otherwise to discriminate,' which is the prohibited conduct." *Stelly v. W. Gulf Mar. Ass'n*, 407 F. Supp. 3d 673, 679 (S.D. Tex. 2019). Thus, "the statute

if anything proscribes a broader range of 'other discrimination' for labor organizations than for employers." *Id.*

The Supreme Court's construction of Title VII's anti-retaliation provision confirms this reading. In *Burlington Northern*, the Court noted that while the phrase "compensation, terms, conditions, or privileges of employment" appears in Title VII's anti-discrimination provision, "[n]o such limiting words appear in the antiretaliation provision." 548 U.S. at 62. Because courts "normally presume" that "Congress acts intentionally and purposely in the disparate inclusion or exclusion" of words, the Court concluded that the anti-retaliation provision is "not limited to discriminatory actions that affect the terms and conditions of employment," but has a broader scope. *Id.* at 62-64 (citation omitted); *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 456 (2008) ("[T]he Court in *Burlington* did not find that Title VII's antiretaliation provision was redundant; it found that the provision had a broader reach than the statute's substantive provision.").

Likewise here, the fact that the "limiting words" of Title VII's employer provision do not appear in the labor organization provision indicates that the latter covers a broader range of discriminatory practices

than the employer provision. In urging otherwise, the Unions' argument

disregards the basic tenet of statutory construction that the Supreme Court

faithfully applied in *Burlington Northern*.[14]

## CONCLUSION

For the foregoing reasons, this Court should reverse the district

court's judgment and remand the case for further appropriate proceedings.

---

[14] In *Burlington Northern*, the Court also set a materiality standard for retaliation claims, holding that retaliatory conduct is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 67 (cleaned up). By contrast, to prove harassment under Title VII's substantive anti-discrimination provision that applies to employers, a plaintiff must show that the harassment she faced was so "severe or pervasive" that it constructively altered the terms or conditions of her employment. *Chambers v. District of Columbia*, 35 F.4th 870, 877-78 (D.C. Cir. 2022) (en banc). Here, this Court need not determine what materiality standard applies to harassment claims under the labor organization provision because Lucas's allegations meet even the more stringent "severe or pervasive" standard. Lucas alleges that Green made unwanted advances for more than a year (including in front of a colleague), which alone could be actionable as sexual harassment. JA048 [R.6 at 5 (¶¶ 36, 38)]; *see* 29 C.F.R. § 1604.11(a) (sexual harassment includes "[u]nwelcome sexual advances" that "creat[e] an intimidating, hostile, or offensive working environment"). Furthermore, Lucas alleges that Green's harassment escalated after she complained about his unwanted advances, that Green called her a "bitch" and threatened to "ruin her federal career," and that Green ultimately expelled her from the union and dropped her grievances. JA049 [R.6 at 6 (¶¶ 45-49)]; JA051 [R.6 at 8 (¶¶ 64-65)]. Lucas has therefore sufficiently pleaded that she suffered discrimination and retaliation in the form of harassment.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

May 24, 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6,274 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney

May 24, 2024

## CERTIFICATE OF SERVICE

I certify that on May 24, 2024, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

Additionally, a copy of the foregoing brief will be served via first-class mail on Defendant-Appellee Johnnie Green, a pro se litigant, as follows:

Johnnie Green
6606 Bluebird Drive
Little Rock, AR 72205


/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney

May 24, 2024